FARMERS & MERCHANTS' IRRIGATION COMPANY, APPELLEE, v. COZAD IRRIGATION COMPANY, APPELLANT.

FILED JUNE 4, 1902.   No. 11,133.

Commissioner's opinion, Department No. 1.

1. **Water Appropriators:** UNDER ASSISTANTS: EQUITY JURISDICTION. The remedy by action of the under-assistants provided for in chapter 93a, article 2, section 35, Compiled Statutes, does not prevent equity jurisdiction of disputes between water appropriators over matters not in terms confided to such assistants.

2. **Right of Prior Appropriator.** The right of a prior appropriator to water is to get his allotted supply without unreasonable inconvenience because of the effect of subsequent appropriations.

3. ———: PRIOR APPROPRIATOR: SUBSEQUENT APPROPRIATOR. The reasonable convenience in getting water of a prior appropriator, is such as leaves it profitable to him to take out the water, and, in addition to that, gives him every advantage which he can have without causing a greater disadvantage to a subsequent appropriator.

APPEAL from the district court for Dawson county. Heard below before SULLIVAN, J.   Modified.

E. C. Calkins, H. V. Calkins and E. D. Owens, for appellant.

Warrington & Stewart and E. A. Cook, contra.

HASTINGS, C.

This case presents two questions: First, as to what equity jurisdiction obtains in dealing with rights acquired under the irrigation laws of this state; and, second, whether a prior appropriator down the stream is entitled to get his allowed amount of water without loss of convenience because of subsequent appropriations above him. Plaintiff's appropriation is conceded to be first in time and right to the extent of 1,142 6-7 cubic feet of water per second, not, however, more than 1-70 of a foot for each acre of land watered. The defendant company has its headgate and intake about one-half mile below the upper end of Willow Island, in the Platte river, which is some seven miles long, and between which and the north bank of the river is a channel about 150 feet wide. Plaintiff's headgate is about a mile below the island. Both take their water from the north bank of the river. The river does not at all times carry enough for both ditches, and in times of greatest need is frequently entirely dry. When the water in the river gets low, it is found in comparatively small channels, mostly, however, in two, near the respective banks of the stream. The river is here about 4,000 feet wide, and its bed at low water is an expanse of sand. Plaintiff procured a temporary injunction against defendant's putting any obstruction in the river, or interfering with its natural flow, or appropriating water from the north side of it to the exclusion of plaintiff as prior appropriator, and also against defendant's maintaining any dam in any channel of the river. It is urged that section 35, chapter 93a, article 2, Compiled Statutes, provides for summary action by the under-assistants of the state board of irrigation, and gives to such under-assistants plenary power to shut the gates of any one taking more than his lawful share of water. It would seem, however, that the powers of the under-assistant do not, in terms, extend to the determination of the precise question presented here, and it was conceded at the hearing that at the time of

the institution of this action there was no under-assistant appointed in this district. The statute does not, in terms, make the authority of the under-assistants exclusive, and it does not seem that it should be made so by construction. Of course, where such remedy is adequate, there would be no equity jurisdiction. But in this case, if plaintiff's rights were infringed upon in the manner complained of, an officer who simply had authority to see that no one got more than his alloted share of water could not properly guard plaintiff's "convenience." If plaintiff's rights went to the extent claimed, we think it was entitled to vindicate them by injunction. The trial court found that, since plaintiff had a prior right to the water, it had also a prior right of convenience in diverting it, and had a right to divert it from an unobstructed river in the manner contemplated by it when constructing its works, and that defendant was therefore bound to permit the water to flow through the channel north of Willow Island unobstructedly to the extent that plaintiff was entitled to draw from it. This particular finding is as follows: "It is further adjudged and decreed by the court that since the plaintiff company has a prior right to the water in said Platte river in point of quantity, that it also has a prior right in point of convenience in the matter of diverting said water from said river, and has a right to divert the water from the said river unobstructed and in the manner contemplated by it at the time it constructed its ditch and filed its claim for water rights, and that therefore the defendant, the Cozad Irrigation Company, is bound to permit the actual flow of water coming by its headgate through this channel between the north bank and the island to pass down uninterrupted to the plaintiff's headgate, or to permit such quantity of water running in said channel to pass down to plaintiff's headgate as plaintiff may require and actually use, not exceeding the amount of its appropriation."

There is some evidence tending to show an unnecessary interference with plaintiff's drawing from the river its

allotted share of the water, but the decree seems based on the foregoing finding. The following part of it certainly rests upon this doctrine of "convenience": "And it is perpetually enjoined from holding back or obstructing the water naturally flowing in said [north] channel to such an extent as to prevent such quantity therein as plaintiff is entitled to use from flowing to plaintiff's headgate." The decree modified the temporary injunction to the extent of permitting the defendant to construct a partial dam below its headgate from Willow Island half way across the channel between that island and the north bank. It also permitted defendant to apply for a further modification of the injunction, if it should be found that such modification is necessary to enable the defendant to get water from the river. A finding was also made that the defendant, by dams above Willow Island, could draw the water as easily across the bed of the river from the south bank as could the plaintiff below the island, and the decree permitted dams at the head of Willow Island to tap the channel along the south bank.

The question, aside from that as to the propriety of equity intervention at all, is really whether the trial court was right in requiring the defendant to go across the river bed to get water in order to let that in the north channel go down in undiminished volume to plaintiff's headgate. The result of the modified injunction in the decree will be that in times when barely the amount of water to which the plaintiff is entitled is going down the river the defendant, merely because it is located upstream, must bring plaintiff's water across this 4,000 feet of sand before it is itself allowed to take out any. This would seem to be putting the plaintiff in a better position than it was before the defendant's franchise was established. All the water would be gathered for plaintiff into the channel north of the island. There is considerable variance in the testimony as to the practicability of bringing the water from the south channel across the sand so as to take it out on the north bank in times of low water. It is clear, so far as

present experience shows, that it must be done by temporary obstructions of the comparatively small channels into which the river divides. Anything in the nature of a permanent dam of the entire river seems out of the question. At least it has not so far been attempted. The position of the appealing defendant is that plaintiff's only right by reason of a prior appropriation, is that water enough shall be left somewhere in this 4,000-foot strip of sand to furnish plaintiff's required number of inches; that the appropriation is of water, and not of convenience, and is by one who knows when taking it that the remaining water in the stream is subject to similar appropriations above. As before suggested, the bringing of water across this 4,000 feet of sand is a somewhat difficult process, and it is even asserted by some witnesses to be practically impossible; that is to say, that it is so difficult and expensive that the privilege of getting it from the south side in low water is worthless. Such, however, is not the finding of the trial court.

The decree is clearly based on a finding that the plaintiff is entitled to an undiminished and unimpaired flow of the river from which to take the water. This finding can hardly be sustained. A requirement that the second appropriator should not throw upon the first one an additional burden of bringing water across the sand bed would seem reasonable. The requirement that he shall leave the channel north of the island open to the extent of one-half its width does not. It seems clear that each appropriator takes subject to the possible rights of all subsequent ones. The waters are made appropriable, and mutual inconvenience arising from such appropriation must be borne to a reasonable extent. As above suggested, inconvenience and expense in obtaining the water may easily become such as to practically forbid its use. The subsequent appropriator, therefore, must not be permitted to interfere unreasonably with its use by his predecessor lower down. Public utility is probably the surest test of reasonable use. The arrangement that will get out the most water, and get

it the cheapest, is the one which was intended by this statute, providing for water appropriations. It can not have been intended that water should be wasted to promote anyone's convenience. It can not, on the other hand, have been intended to allow plaintiff so many inches of water from the north side of Platte river and at the same time permit a subsequent diverter up the stream to make it impossible for plaintiff to get them without more expense than they are worth. Such an arrangement should be made as will enable the upper and subsequent appropriator to get what water it can, after providing for plaintiff's full supply with reasonable convenience. Reasonable convenience would seem to be such a degree of ease in getting this water as will permit its profitable exploiting and such additional convenience as can be attained without putting some one else, who is also getting water at a profit, to greater trouble.

If, as the trial court found, and the proofs seem to indicate, the defendant can go across the river after water as readily as the plaintiff can, and turn the main south channel north of the island, it would seem reasonable to require it to do so rather than throw on the prior appropriator this inconvenience. When the water, to the extent practically possible,—that is, by an expense commensurate with the value of the result,—is thus brought across to the north side, it is the right of defendant to take it out so long as enough is left to enable plaintiff, by a like expense, to get its allotted supply. Where an equal inconvenience is to be thrown upon one or the other, the subsequent appropriator should bear it. Where a deprivation must be suffered because water is scarce, of course the first appropriator must not suffer until the last. Whenever an inconvenience amounts to a deprivation, he should not have to bear it. Short of this, it should go where it is easiest borne. Applying this to the case in hand, the action of the trial court in absolutely enjoining the maintenance of a dam across the north channel by defendant seems unwarranted, and a compelling of defendant to

gather the water to a considerable extent for plaintiff. Defendant should not be required to aid its more fortunate predecessor in getting water out of the sand.

It is recommended that the injunction be so modified as to permit defendant to put a dam across the north channel, between Willow Island and the north bank of the river, and across the south channel at the head of the island, but perpetually enjoining defendant, in times when no more than plaintiff's allotted supply is going down the north channel, from so taking water as to leave less in the north channel than would go there if defendant's dams were not maintained.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the decree of injunction entered by the district court be so modified as to permit defendant to put a dam across the north channel, between Willow Island and the north bank of the river, and across the south channel at the head of the island, but perpetually enjoining defendant, in times when no more than plaintiff's allotted supply is going down the north channel, from so taking water as to leave less in the north channel than would go there if defendant's dams were not maintained.

JUDGMENT ACCORDINGLY.